# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

---

**DANIEL KUHLER**,

                   Plaintiff,

    v.

                              No. 2:23-CV-00624-WJ-GBW

**PHI HEALTH, LLC d/b/a**
**PHI AIR MEDICAL**,

                   Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

       **THIS MATTER** comes before the Court on Defendant PHI Health, LLC's ("PHI") Motion for Summary Judgment (**Doc. 33**). This case arose after PHI terminated the employment of Plaintiff Daniel Kuhler ("Kuhler") for cause shortly after he asked to take time off for an upcoming surgery. Having considered the parties' briefing[1] and the applicable law, the Court finds the Motion is well-taken and is, therefore, **GRANTED**.

## BACKGROUND[2]

       Kuhler was hired by PHI to be a flight paramedic (**UMF 1**). His start date for this at-will employment was May 7, 2018 (**UMF 1 & 2**). In this role, Kuhler—along with a flight nurse—

---

[1] In addition to PHI's motion, the Court also considered: Kuhler's Response (**Doc. 35**), PHI's Reply (**Doc. 36**), Kuhler's Surreply (**Doc. 39**), and PHI's Response (**Doc. 40**).

[2] The facts recited below come from PHI's Statement of Undisputed Material Facts ("UMF") (**Doc. 33 at 8–14**) as well as Kuhler's admissions (**Doc. 35**).

       PHI's motion numbered all the undisputed facts—thus complying with D.N.M.LR-Civ 56.1. Kuhler's Response, however, does not comply with this aspect of the local rules. Although the disputed facts are appropriately referenced, the Court declines to adopt any "additional facts" asserted by Kuhler because they are not listed or lettered, as required. D.N.M.LR-Civ 56.1(b). *See* **Doc. 36 at 7 n.4** (pointing out Kuhler's failure to comply with the local rules). Instead, Kuhler cites to various Exhibits in his "Background" section—without ever listing/lettering any additional facts.

provided medical care during air medical transportation (essentially, these are medevac flights). *See* **Doc. 1-2 at 3; Doc. 33 at 3; Doc. 35 at 12**.

In January 2019, Kuhler requested (and PHI granted) leave under the Family and Medical Leave Act ("FMLA") for an eye condition (**UMF 3**).[3] Specifically, Kuhler received treatment for optic neuritis.[4] *Ibid.* By the end of the month, Kuhler returned to work at "full-duty status." **UMF 4**. A few months later, in early October 2019, Kuhler informed his supervisor that he would need time off for an ear surgery (**UMF 7**). The supervisor told Kuhler to contact PHI's occupational health nurse to discuss the leave associated with the surgery. *Ibid.* Specifically, PHI needed more information to determine "the type"[5] of leave. **UMF 8**. But, for one reason or another, Kuhler did not "contact" the occupational health nurse (**UMFs 8–10**) once the surgery was scheduled. Nor did he "submit any paperwork" requesting time off for the surgery. **UMF 10**.[6] And this ear surgery is the only "accommodation" at issue in this lawsuit. **UMF 11**.[7]

---

[3] Plaintiff Kuhler's Complaint alleges both an eye condition and an ear condition. First, he alleges he had an eye condition—optic neuritis. **Doc. 1-2 at ¶ 6**. He sought and received FMLA leave for treatment of the optic neuritis. **UMF 3**. Kuhler also alleges he sustained a perforated ear drum. **Doc. 1-2 at ¶ 5**. Later, Kuhler informed his supervisor that he would need time off for ear surgery. **UMF 7**. The alleged failure to accommodate relates to the ear surgery. **UMF 11.**

[4] Optic neuritis is the inflammation of the optic nerve. Common symptoms include pain with eye movement and/or temporary vision loss in the impaired eye. *Optic Neuritis*, Mayo Clinic (last visited August 12, 2024), https://www.mayoclinic.org/diseases-conditions/optic-neuritis/symptoms-causes/syc-20354953 [https://perma.cc/GAF5-YMXZ].

[5] The parties agree that Kuhler's leave could have fallen under either the FMLA or regular paid time off ("PTO") category. **Doc. 33 at 4; Doc. 35-4 at 3**.

[6] Kuhler disputes this fact "insofar as it implies that Mr. Kuhler did not submit paperwork because he did not schedule the appointments." **Doc. 35 at 13 (UMF 10)**. In the same breath, however, Kuhler admits that "scheduling was not complete until after" he was terminated.

    What matters here is the "type" of leave. *See* **UMF 8**. The fact his ear surgery could have fallen into either FMLA or PTO is not disputed. In order to grant the appropriate type of leave, an appointment was necessary. Thus, whether Kuhler took steps to schedule the surgery after his employment was terminated is immaterial. As PHI points out, Kuhler does not dispute this fact—but instead "explains ***why*** he did not submit the paperwork." **Doc. 36 at 2**.

[7] Kuhler's response (**Doc. 35 at 2–4 & 13**) argues that PHI was hostile towards his FMLA leave for his eye condition. At the same time, Kuhler acknowledges the only accommodation at issue in this lawsuit is "related to ear surgery." **UMF 11**.

Having sufficiently discussed Kuhler's employment history, the Court now moves on to the flight at issue.

On October 10, 2019, Kuhler's flight crew was dispatched for an emergency medical transport. **UMF 12**. Specifically, this flight request was for a high-risk pregnant patient, ***ibid.***, out of Lincoln County Medical Center. The flight crew was dispatched to meet a ground ambulance at the Ruidoso-Sierra Blanca Regional airport. *Id.* Upon arrival, however, the pilot could not transport the patient—due to concerns over exceeding the maximum authorized flight hours. **UMF 13**. Nevertheless, the PHI flight crew "interacted with, assessed and placed a PHI-owned fetal monitor on the patient." **UMF 14**. Ultimately, the crew was not able to transport the patient, **UMF 15**, and another helicopter was dispatched.

PHI policy dictates the standard of care under these circumstances (**UMF 16**).[8] PHI requires a "bedside to beside" standard of care. *Id.* Of course, this policy understands that extenuating circumstances may arise that necessitate PHI personnel to release patient care to another medical provider before a full "bedside to bedside" transfer occurs. *Id.*

Neither Kuhler nor the flight nurse offered to accompany the patient to the new rendezvous point (at the Carrizozo airport). **UMF 19**. Neither Kuhler nor the flight nurse called the transferring physician, receiving physician, or PHI to coordinate another transfer. **UMF 18**.[9]

---

[8] With respect to UMF 16, Kuhler disputes the fact any failure to comply with "Policy 1.4.1 was a basis for [his] termination." **Doc. 35 at 13**. The Court notes that Kuhler does not dispute the existence of applicable PHI policies, though.

[9] Again, Kuhler disputes these facts "insofar as they imply that any alleged failure to comply . . . was a basis for [his] termination." **Doc. 35 at 13**. The underlying facts in UMFs 16–19 (*viz.* the existence of PHI's policy, the standard of care, Kuhler's knowledge about the ambulance crew's training and experience, Kuhler's failure to call the aforementioned parties, and Kuhler's failure to offer to accompany the patient) are not disputed. Instead, only the legal conclusion is disputed.

Later, PHI received a complaint from Lincoln County EMS about Kuhler and the flight nurse (**UMF 20**).[10] In this complaint, Lincoln County EMS noted that Kuhler and the flight nurse "made significant patient contact and initiated monitoring before leaving the scene." *Id.* Because of this complaint, PHI initiated an internal investigation[11] (**UMF 21**).

During the investigation, "written statements, data from the fetal monitor, PHI dispatch records, and a New Mexico nursing regulation defining patient abandonment" were collected. **UMF 22**. PHI also asked Kuhler and the flight nurse to provide statements (**UMF 23**).

Kuhler also admits that he was given an opportunity—as well as extensions[12]—to explain the events of October 10, 2019. **UMF 24**. Ultimately, Kuhler provided a statement (after the deadline from his supervisor), wherein he simply adopted the flight nurse's statement. *Id.*

After the internal investigation was completed, the Yslas Report found that Kuhler (and the flight nurse) had abandoned a patient and were dishonest in their statements. **UMF 26**.[13] Based

---

[10] This fact is both "not dispute[d]," **Doc. 35 at 11**, and "Dispute[d]," *id.* **at 12**. At first, Kuhler admits to UMF 20. Then, on the next page, Kuhler disputes UMF 20 based on "hearsay."

    Inadmissible hearsay cannot be considered during the summary judgment stage. *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1211 (10th Cir. 2022). But PHI explains the record of the complaint "is offered to show a statement was made, not to prove its truth." **Doc. 36 at 2**. Additionally, the complaint itself is potentially admissible under various hearsay exceptions—namely, Fed. R. Evid. 803(4), 803(5), 803(6), and 807. Either way, the substance of the complaint can be properly presented by testimony at trial (meaning it can be considered during the summary judgment stage). *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

    Finally, for what it's worth, Kuhler does not dispute UMFs 21–23 (which discuss the fact the objected-to complaint formed the underlying basis for the admitted-to internal investigation).

[11] Regional Director Erin Yslas served as the investigator. Accordingly, the Court refers to the investigation's findings as the "Yslas Report."

[12] Once again, Kuhler disputes this fact based on hearsay (**Doc. 35 at 14**). Kuhler does not dispute that he was asked on several occasions to provide a statement. Nor does he contest that he missed the noon deadline. Finally, he does not contest—nor could he—the fact he adopted the flight nurse's statement. Accordingly, the Court finds there is no dispute as to a material fact in UMF 24. *See* **Doc. 33-11 at 2–3; Doc. 36-1 at 2**.

    UMF 24 is supported by admissible evidence—and Kuhler merely quibbles with the resultant legal conclusion. *O'Toole v. Northrop Grumman Corp.*, 305 F.3d 1222, 1227 n.4 (10th Cir. 2002).

[13] Kuhler disputes this fact stating there is "sufficient circumstantial evidence from which a jury could conclude that Ms. Yslas' purported reasons for termination were pretextual." **Doc. 35 at 14**. Kuhler does not set forth "any facts, admissible or otherwise" that place this UMF in dispute. *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1031 (10th Cir. 2022) (citation omitted). Instead, Kuhler offers *legal*

on these findings, the Yslas Report recommended termination of both employees. *Id.* Yslas presented the report to PHI's Chief Human Resources Officer ("CHRO"). **UMF 27**. After reviewing the Yslas Report, and accompanying PHI policies, the CHRO accepted the recommendation—and approved the termination of Kuhler and the flight nurse (**UMF 28**).

Yslas and the CHRO were the two decision-makers in this termination process (**UMF 29**). Kuhler argues that his supervisor, Greg Steiner, was also a decision-maker (**Doc. 35 at 14–15**). But Steiner's involvement (or lack thereof) does not place a material fact in dispute—rather, this is just semantics.[14] Kuhler's attempt to dispute UMF 30 fares no better (**Doc. 35 at 15**). Neither Yslas nor the CHRO knew of Kuhler's request for an accommodation (**UMFs 30–31**). *See infra* ¶ II.B.4.b.

No one from PHI's occupational health office played "any role in the investigation . . . or the decision to terminate Mr. Kuhler's employment." **UMF 33**. Neither did the flight nurse. **UMF 34**. In fact, the flight nurse was also terminated following PHI's investigation into the October 10, 2019, incident (**UMF 35**).

Finally, Kuhler admits that: (1) he did not file a charge with the New Mexico Human Rights Bureau ("HRB") or U.S. Equal Employment Opportunity Commission ("EEOC"), (2) he has no

---

arguments—which are insufficient to rebut the *facts* asserted by PHI. *See Medina v. Catholic Health Initiatives*, 877 F.3d 1213, 1228 (10th Cir. 2017); *see also 5333 Mattress King LLC v. Hanover Ins. Co.*, 683 F. Supp. 3d 1188, 1203 (D. Colo. 2023) ("legal conclusions . . . do[] not create a genuine dispute of material fact.").

[14] As Kuhler's supervisor, Steiner requested a written statement (**UMF 24–25**). Linguistically, then, Steiner helped investigate (**Doc. 35 at 14–15**). So Kuhler is correct, in part.

But the reason that UMF 29 is not meaningfully disputed is because of Kuhler's previous admission. In UMF 25—which he agreed to in full (**Doc. 35 at 12**)—PHI stated: "The ***only role Steiner played*** in the investigation was requesting written statements from Kuhler and the flight nurse, at the direction of Jimmy Torres, and obtaining fetal monitor data, which he reported to another member of PHI management." **UMF 25** (emphasis added). Thus, Steiner's role as an investigator does not mean he was a decision-maker in the termination process. *Compare* **UMF 25**, *with* **UMFs 29 & 32**.

knowledge of PHI's decision-making process related to the termination, and (3) he has no evidence that PHI intended to harm him through the termination of his employment (**UMFs 37–39**).

## LEGAL STANDARD

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The facts are viewed in the light most favorable to the Plaintiff and the Court draws all reasonable inferences in his favor. *Hermann v. Salt Lake City Corp.*, 21 F.4th 666, 673 (10th Cir. 2021).

Only *genuine* disputes as to *material* facts preclude summary judgment. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). "Factual disputes about immaterial items are irrelevant." *Ibid.* "A fact is material only if it might affect the outcome of the suit under governing law. And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the moving party." *Bennett v. Windstream Commc'ns., Inc.*, 792 F.3d 1261, 1265 (10th Cir. 2015) (cleaned up).

The movant—here, PHI—bears the initial burden to demonstrate the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). If the movant carries this burden, then "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (internal quotations and citations omitted). If the nonmovant demonstrates a genuine dispute as to material facts, the Court views those facts in the light most favorable to him. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"To defeat a motion for summary judgment, evidence . . . must be based on more than mere speculation, conjecture, or surmise." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) (Hartz, J.) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).

## DISCUSSION

Kuhler brings two counts against his former employer, PHI. In Count I, Kuhler alleges that PHI wrongfully discharged him for failing to accommodate (**Doc. 1-2 at 4**). In Count II, Kuhler alleges that PHI violated public policy—established under the New Mexico Human Rights Act ("NMHRA")—by refusing or failing to accommodate his "physical or mental handicap or serious medical condition." *Id.*

PHI seeks summary judgment on both Counts. The Court now discusses each in turn.

Because this is a diversity case, the Court must apply New Mexico substantive law. *Geometwatch Corp. v. Behunin*, 38 F.4th 1183, 1201 (10th Cir. 2022) (Holmes, J.). Accordingly, the analysis below is rooted in New Mexico law. Of course, the federal summary judgment standards outlined above are procedural—which this Court must also apply. *Prager v. Campbell Cnty. Mem'l Hosp.*, 731 F.3d 1046, 1060 (10th Cir. 2013).

## I. Failure to Accommodate (Count I)

### A. "Independent tort"

In his Complaint (**Doc. 1-2 at 4**), Kuhler states that New Mexico recognizes an independent tort of failure to accommodate. In so doing, he relies on an unpublished New Mexico Court of Appeals case *West v. N.M. Tax'n & Revenue Dep't*, 2014 N.M. App. Unpub. LEXIS 141 (N.M. Ct. App. Apr. 8, 2014) (unpublished). But this unpublished case has never been cited. In fact, the jury instruction discussed in the *West* case cites to "UJI 13-2307D NMRA"—which is the

NMHRA instruction. *See* UJI 13-2300 NMRA ("The instructions in this chapter are to be used in cases . . . brought under the . . . New Mexico Human Rights Act.").

Unsurprisingly, the Court refuses to give this passing phrase about an "independent tort" any weight. Plus, the Court notes that, "a cause of action must be judged by its allegations, not its label." *Beaudry v. Farmers Ins. Exch.*, 2018-NMSC-012, at ¶ 21, 412 P.3d 1100 (N.M. 2018) (citation omitted). This means Kuhler's pleaded cause of action in Count I does not exist. And without a properly pleaded claim, summary judgment could be granted. *Brown v. Austin*, 13 F.4th 1079, 1088 (10th Cir. 2021) (explaining that because Plaintiff "failed to state a prima facie claim for failure to accommodate," the district court "properly granted summary judgment").

Nevertheless, the Court proceeds to analyze Count I under the NMHRA. This additional discussion is helpful for the parties—and for the Court. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 950 (10th Cir. 2002).

### B. Failure to accommodate under the NMHRA

NMHRA case law is quite clear. In fact, the New Mexico Supreme Court functionally adopted the Tenth Circuit's articulation of the Americans with Disabilities Act as applied to a NMHRA claim.[15] *See Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, at ¶ 8, 131 N.M. 607, 41 P.3d 333 (N.M. 2001). Under both standards, a Plaintiff must show that: (1) he is a disabled person within the meaning of the statute; (2) he is qualified; and (3) the employer terminated him because of the disability.

Prior to bringing suit under the NMHRA, however, the particular grievance procedures must be followed. *See* NMSA 1978 § 28-1-10. "Full compliance with the NMHRA grievance

---

[15] The NMHRA is, essentially, the state law corollary to the Americans with Disabilities Act ("ADA"). Both Acts prohibit discrimination against individuals with disabilities. *See Valdez v. McGill*, 462 F. App'x 814, 817 & n.4 (10th Cir. 2012) (unpublished) (noting that the ADA's definition of "qualified individual" is equated with the NMHRA's definition of "person otherwise qualified").

procedures is a prerequisite to filing an NMHRA claim." *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 16, 127 N.M. 282, 980 P.2d 65 (N.M. 1999) (cleaned up); *see also Jaramillo v. J.C. Penny Co.*, 1985-NMCA-002, ¶ 2, 102 N.M. 272, 694 P.2d 528 (N.M. Ct. App. 1985) (holding administrative exhaustion is a required prerequisite to bring suit under the NMHRA).

There are three carve-outs for the exhaustion requirement. *See Gormley v. Coca-Cola Enters.*, 2004-NMCA-021, at ¶ 8, 135 N.M. 128, 85 P.3d 252 (N.M. Ct. App. 2004) (explaining only retaliatory discharge, intentional infliction of emotional distress, and prima facie tort are permitted to proceed without exhausting administrative remedies), *aff'd* 2005-NMSC-003. Notably, a failure to accommodate claim is not one of them.

This means Kuhler was required to pursue the administrative procedures under the NMHRA prior to filing a lawsuit. He did not. By his own admission, Kuhler agrees that he did not file a charge with the HRB or EEOC. **UMF 37**. This failure to exhaust is determinative (and fatal).

## II. Retaliatory Discharge (Count II)

In New Mexico, a Plaintiff can file a common law cause of action "which allows a discharged at-will employee to recover in tort when his discharge contravenes a clear mandate of public policy." *Chavez v. Manville Prods. Corp.*, 1989-NMSC-050, at ¶ 16, 108 N.M. 643, 777 P.2d 371 (N.M. 1989). New Mexico courts recognize that the NMHRA provides a clear mandate of state public policy against discriminatory employment practices. *See Juneau v. Intel Corp.*, 2006-NMSC-002, at ¶ 14, 139 N.M. 12, 127 P.3d 548 (N.M. 2005). Consequently, a Plaintiff can bring a wrongful termination cause of action under: (1) common law, or (2) the NMHRA.

Kuhler contends he brought a common law retaliatory discharge claim (**Doc. 39 at 1**). On its face, however, the Complaint (**Doc. 1-2 at 4**) cites to NMSA 1978 § 28-1-7(J). As the party

bringing suit, Kuhler is the "master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913). So, once again, the Court analyzes both potential avenues.

Either way, the law of retaliatory discharge "must be read against the backdrop of the doctrine of at-will employment." *Silva v. Am. Fed'n. of State, Cnty. & Mun. Emps.*, 2001-NMSC-038, at ¶ 10, 131 N.M. 364, 37 P.3d 81 (N.M. 2001). In practice, this means a common law wrongful termination claim fails if the termination does not also violate the NMHRA. *See Trujillo*, 2002-NMSC-004, at ¶ 20; *see generally Gandy v. Wal-Mart Stores, Inc.*, 1994-NMSC-040, 117 N.M. 441, 872 P.2d 859 (N.M. 1994) (holding that an unlawful discharge under the HRA provides the public policy basis for a claim of retaliatory discharge).

Ironically, then, the Court's discussion of whether Kuhler's retaliatory discharge claim survives summary judgment must begin with addressing whether that claim survives summary judgment when analyzed under § 28-1-7 of the NMHRA.

### A. Analyzing NMHRA claims

Section 28-1-7 of the NMHRA declares it unlawful for an employer to "refuse or fail to accommodate a person's physical or mental disability or serious medical condition, unless such accommodation is unreasonable or an undue hardship." NMSA 1978 § 28-1-7(J). New Mexico courts have adopted the "federal burden-shifting methodology" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973) [hereinafter "*McDonnell Douglas*"] which applies "when considering a violation of the NMHRA." *Juneau*, 2006-NMSC-002, at ¶ 9.

In order to establish a prima facie case of retaliatory discharge, Kuhler must show that "(1) he engaged in protected activity, (2) he was subject to adverse employment action subsequent to, or contemporaneous with the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action." *Juneau*, 2006-NMSC-002, at ¶ 11.

### *1. "But-for causation" or "motivating factor"*

PHI argues that retaliatory discharge claim requires Kuhler to prove "'but-for' causation." **Doc. 36 at 3**. Kuhler, naturally, pushes back and argues for a "motivating factor" standard (**Doc. 39 at 1**). The following discussion is important for two interrelated reasons: first, the Court wants to ensure that everyone is on the same sheet of music with respect to the state of the law; and second, it's necessary to highlight how complicated this area of the law is.

So why is there disagreement about which standard applies? Well, for starters, the case law at the state and federal level is convoluted. For example, the Court highlights this passage from the New Mexico Supreme Court: "In order to prevail on a claim of retaliation, the [Plaintiff] must prove that the actual ***motivating factor*** precipitating the transfer was retaliatory. In other words, the [Plaintiff] must prove that '***but for***' the allegedly retaliatory motive." *Cordova v. LeMaster*, 2004-NMSC-026, ¶ 12, 136 N.M. 217, 96 P.3d 778 (N.M. 2004) (internal citation omitted) (emphasis added). This use of both standards obviously causes some confusion.

And if the New Mexico Supreme Court's interchangeable use of two standards wasn't enough, here are a few more examples.

When dealing with Whistleblower Protection Act ("WPA") cases, the Court of Appeals applies the "motivating factor" standard. *See, e.g., Anderson v. Second Jud. Dist. Ct.*, 2024 N.M. App. Unpub. LEXIS 44 (N.M. Ct. App. Feb. 8, 2024) (unpublished); *Lerma v. State*, 2024-NMCA-011, at ¶¶ 30–31, 541 P.3d 151 (N.M. Ct. App. 2023); *Peasnall v. Curry Cnty. Bd. of Cnty. Comm'rs*, 2021 N.M. App. Unpub. LEXIS 326 (N.M. Ct. App. Sept. 27, 2021) (unpublished); *Velasquez v. Regents of N. N.M. College*, 2021-NMCA-007, at ¶ 43, 484 P.3d 970 (N.M. Ct. App. 2020). The model jury instruction also uses the language "motivating factor." UJI 13-2304 NMRA; *see* **Doc. 39 at 1** (citing same).

At the same time, however, the New Mexico Supreme Court and Court of Appeals used language approaching "but-for" causation when discussing the NMHRA. *See, e.g., Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 1993-NMSC-015, ¶ 24, 115 N.M. 293, 850 P.2d 996 (N.M. 1993) (explaining the employee "must demonstrate that he was discharged because he performed an act that public policy has authorized"); *Michaels v. Anglo Am. Auto Auctions, Inc.*, 1994-NMSC-015, ¶ 5, 117 N.M. 91, 869 P.2d 279 (N.M. 1994) (same).

Making matters worse, step three of the *McDonnell Douglas* framework applies differently based on the underlying cause of action. *Compare Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (analyzing Title VII claims), *and Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 176 (2009) ("but-for" causation is required in age discrimination cases), *with Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (explaining ADA retaliation claim requires "retaliatory motive" which is similar to "'but-for causation'"), *and Dennis v. Fitzsimons*, 850 F. App'x 598, 601 n.4 (10th Cir. 2021) (unpublished) (declining to adopt "but for" causation in ADA claims).

Outside of the Tenth Circuit,[16] several federal courts have interpreted *Gross* and *Nassar* to mean ADA claims[17] require "but-for" causation. *See Nassar*, 570 U.S. at 350 (explaining that "because of," "by reason of," "on account of," and "based on" are all indicative of a but-for causal relationship). Yet, neither the Supreme Court nor the Tenth Circuit have ruled an ADA

---

[16] On review, it appears that the Second, Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits have concluded ADA discrimination claims must be evaluated under a "but-for" causation standard. *See, e.g., Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019); *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235–36 (4th Cir. 2016); *M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 453 (6th Cir. 2021); *Brooks v. Avancez*, 39 F.4th 424, 440 n.11 (7th Cir. 2022) (assuming that "but-for" causation is required even after the ADA amendment in 2008); *Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019); *Akridge v. Alfa Ins. Co.*, 93 F.4th 1181, 1192 (11th Cir. 2024).

[17] The ADA currently prohibits discrimination "on the basis of" disability. 42 U.S.C. § 12112(a) (2009). Previously, the phrasing of § 12112(a) prohibited discrimination "because of disability."

discrimination claim requires "but-for" causation. Moreover, the New Mexico Supreme Court rejected the argument that "because of" means "but for" in *Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 7, 136 N.M. 647, 103 P.3d 571 (N.M. 2004). More recently—after the *Nassar* decision—the New Mexico Court of Appeals rejected the same argument about "but-for causation." *Loggins v. City of Albuquerque*, 2022 N.M. App. Unpub. LEXIS 442, at *13 (N.M. Ct. App. Dec. 5, 2022) (unpublished).

To recap: the New Mexico courts do not require "but-for" causation under the NMHRA. This means "but for" causation is not required for the common law tort of retaliatory discharge. *See, e.g., Trujillo*, 2002-NMSC-004, at ¶ 20 (explaining a common law wrongful termination claim must also violate the NMHRA); *Gandy*, 1994-NMSC-040, at ¶¶ 10–13 (same). Likewise, neither the Tenth Circuit nor Supreme Court have ruled ADA claims—or their state-law corollaries—require "but-for" causation. As it stands, then, no binding precedent dictates this Court apply a "but-for" causation standard when assessing Kuhler's disability-based retaliatory discharge claim.

In sum, both parties are correct in part (and incorrect in part). Kuhler is correct that the jury instruction uses the "motivating factor" standard (**Doc. 39 at 1**). But he is incorrect when he argues New Mexico courts apply various tests for pretext as proof under this standard (***Id.* at 2; Doc. 35 at 1–2**). *See infra* ¶ II.B.4. Likewise, PHI is correct that "[n]o New Mexico case has held that the motivating factor test or the *McDonnel[l] Douglas* framework applies to the narrow intentional tort" that Kuhler asserts (**Doc. 40 at 2 n.1**). At the same time, PHI's argument overlooks the fact that numerous cases explain *McDonnell Douglas* applies generally to "employment discrimination claims." *Gonzales v. N.M. Dep't of Health*, 2000-NMSC-029, at ¶ 21, 129 N.M. 586, 11 P.3d 550 (N.M. 2000); *Smith v. FDC Corp.*, 1990-NMSC-020, ¶¶ 9–11, 109 N.M. 514, 787 P.2d 433 (N.M. 1990). Plus, both parties disregard the fact that *McDonnell Douglas* is a "framework . . . not a

required method of proof." *Martinez v. Yellow Freight Sys., Inc.*, 1992-NMSC-015, ¶ 9, 113 N.M. 366, 826 P.2d 962 (N.M. 1992).

All this to say, the Court ultimately concludes that the *McDonnell Douglas* framework applies to Count II (**Doc. 36 at 8–9; Doc. 39 at 1–2**). And, because no relevant precedent indicates that a retaliatory discharge claim requires "but-for" causation, the Court concludes the motivating factor test applies (**Doc. 39 at 1; Doc. 40 at 1–2 & n.1**).

### B. *McDonnell Douglas* burden shifting

Under *McDonnell Douglas*, an employee bears the initial burden of demonstrating a prima facie case of discrimination (which then shifts the burden to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action). *Gonzales*, 2000-NMSC-029, at ¶ 21. Then, at step three, the employee can rebut the employer's proffered reason as pretextual or otherwise inadequate. *Ibid.*

### 1. Prima facie case of discrimination

To defeat summary judgment on Count II, Kuhler must demonstrate that: (1) he belonged to a protected class, (2) suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *See Gonzales*, 2000-NMSC-029, at ¶ 21; *see also Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021) (Tymkovich, C.J.).

Kuhler posits he was terminated for a medical condition (**Doc. 1-2 at 4**)—which is a protected activity under the NMHRA and public policy (**Doc. 35 at 15–16**). Under Tenth Circuit precedent, "an ADA retaliation plaintiff may rely solely on temporal proximity to show causation during the prima facie stage of the *McDonnell Douglas* framework where his protected activity is

closely followed by an adverse employment action." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016).

But New Mexico law has not adopted the "sole" reliance standard of temporal proximity. *See Juneau*, 2006-NMSC-002, at ¶¶ 20–22. Thus, the fact Kuhler was terminated on October 23, 2019 (**UMF 35**)—approximately three weeks after he notified his supervisor "that he anticipated needing time off" (**UMF 7**)—does not, by itself, establish a prima facie case. The temporal proximity is not enough to shift the burden from Kuhler to PHI.[18]

However, there is no doubt that Kuhler: (1) discussed needing time off for a future ear surgery (**UMFs 7 & 8**); (2) was terminated (**UMFs 29 & 35**); and (3) both these actions occurred in the same month. This is a close call—but the Court finds there is sufficient evidence to infer a prima facie case and continue the analysis.

### 2. Legitimate, non-discriminatory reason

Because Kuhler presented a prima facie case, PHI now bears the burden of articulating a non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802–03. This burden is "exceedingly light." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (citations omitted). New Mexico courts agree—the employer only needs to provide "some

---

[18] The Court notes that New Mexico Supreme Court caselaw indicates Kuhler's passing request to his supervisor about expecting to need time off in the future is likely insufficient to put PHI on notice that he was requesting an accommodation. *See Trujillo*, 2002-NMSC-004, at ¶¶ 15–17; *see also McCoy v. Ltd. Driving Sch., Inc.*, No. 15-cv-639, 2016 U.S. Dist. LEXIS 103538, at *21 (D.N.M. Aug. 4, 2016) (failing to provide documentation to an employer about a medical condition means a Plaintiff's medical discrimination claim must fail).

    If a doctor's certificate in *Trujillo* was not sufficient notice, then Kuhler's lack of a doctor's note is likely also insufficient. Here, Kuhler: (1) did not schedule surgery, (2) did not request leave, (3) did not communicate with PHI management regarding the leave for surgery, (4) and did not submit any paperwork. **UMFs 8–11**. Although Count II could fail here, the Court conducts a full *McDonnell Douglas* analysis of Kuhler's claim.

legitimate" reason for the action. *Behrmann v. Phototron Corp.*, 1990-NMSC-073, at ¶ 12, 110 N.M. 323, 795 P.2d 1015 (N.M. 1990).

Here, PHI listed several reasons for terminating Kuhler's employment. The Court evaluates each—ultimately concluding all three reasons are legitimate and non-discriminatory.

### a. Dishonesty and false statement(s)

According to the undisputed facts, dishonesty was one of PHI's reasons for terminating Kuhler's employment. **UMFs 24 & 26**. PHI presented evidence that Kuhler was dishonest. *See* **Doc. 33-4 at 2** ("The crew members stated multiple times that they did not have patient contact"); **Docs. 33-11 & 33-12** (Kuhler adopts flight nurse's statement, **Doc. 33-5**, admitting to patient contact); **Doc. 35-8** (email from Kuhler denying "taking over care" of patient). Accordingly, the Court concludes PHI had "some legitimate" reason for terminating Kuhler's employment.

### b. Patient abandonment

Next, PHI claim Kuhler was terminated for patient abandonment. In the termination letter (**Doc. 33-14**), PHI explains Kuhler "initiated patient contact . . . [and] returned care over to a lower level of care[,] which resulted in patient abandonment."

In support of this non-discriminatory reason, PHI provided evidence of the internal investigation—including the definition of abandonment, the acts taken by Kuhler on October 10th, the crews' statements, and other information. **UMFs. 15–20, 22, 26**; **Doc. 36-4**.

Upon review, the Court concludes this reason is also legitimate.

### c. PHI policies

The final reason listed in Kuhler's termination letter deals with alleged violations of PHI policy (**Doc. 33-14**). Specifically, Kuhler was terminated for violating policies 5.2 and 5.3. ***Ibid.***

The parties agree that the Yslas Report—which was provided to the CHRO—contained PHI's applicable policies (**UMF 28**). The CHRO's affidavit provides further support for this fact (**Doc. 33-10 at ¶ 8**). As does Yslas's deposition (**Doc. 36-2**).

The Court once again concludes that PHI articulated a non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802–03.

### 3. Proffered pretext

Because PHI provided non-discriminatory reasons for terminating Kuhler, the Court moves to step three of the *McDonnell Douglas* methodology. *See Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, at ¶ 16, 124 N.M. 633, 954 P.2d 65 (N.M. 1998). Here, the burden once again falls on Kuhler.

In step three, Kuhler can either: (1) produce direct evidence of discrimination, or (2) prove PHI's reason for termination was pretextual. *Id.* at ¶ 22; *see also DePaula*, 859 F.3d at 969–70 ("explaining a Plaintiff must show "the proffered reason is factually false," or that "discrimination was a primary factor in the employer's decision"). Kuhler's argument is rooted in the latter. *See* **Doc. 35 at 16** (discussing proof of pretext by circumstantial evidence).

Under *McDonnell Douglas*, pretext can be shown through evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its action." *Laul v. Los Alamos Nat't Labs.*, 309 F. Supp. 3d 1119, 1148 (D.N.M. 2016) (Parker, J.) (quoting *Argo*, 452 F.3d at 1203). When analyzing pretext evidence, Courts are not to sit as "super personnel departments free to second-guess the business judgment of an employer." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (cleaned up). So rather than ask if the employer's reasons were "wise, fair, or correct," the relevant inquiry for the Court is whether the employer "honestly believed those reasons and acted in good faith upon those beliefs."

*DePaula*, 859 F.3d at 971 (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007)); *see also Loggins*, 2022 N.M. App. Unpub. LEXIS 442, at *10 (same).

When, as here, an employer advances numerous reasons for taking an adverse employment action, the employee "must proffer evidence showing each of the employer's justifications is pretextual." *Lobato v. N.M. Env't Dep't.*, 733 F.3d 1283, 1289 (10th Cir. 2013) (cleaned up); *see also Garcia-Montoya v. State Treasurer's Off.*, 2001-NMSC-003, at ¶ 45, 130 N.M. 25, 16 P.3d 1084 (N.M. 2001) (explaining a Plaintiff needs to present "evidence of the falsity of the proffered reason for the employment action"). But "mere conjecture that the employer's explanation is pretext is insufficient." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1225 (10th Cir. 2007); *Cates*, 1998-NMSC-002, at ¶ 24 (same).

As detailed below, disproving each reason for his termination is too steep a task for Kuhler.

### *a. Dishonesty and false statement(s)*

Kuhler argues that if he was dishonest, PHI "had a legal duty" to report him to the Department of Health (**Doc. 35 at 9**). But PHI did report Kuhler (**Doc. 36 at 9–10; Doc. 36-3; Doc. 40-1**). Whether or not Kuhler "receive[d] any followup [sic] from the Department of Health" is immaterial. **Doc. 39 at 5**. This line of attack is baseless.

Next, Kuhler argues that he was not dishonest because he agreed with the flight nurse's statement (**Doc. 35 at 11**). According to Kuhler, because he later adopted the statement acknowledging patient contact, that means he was honest. This argument is ridiculous. PHI's allegation that Kuhler was dishonest is supported by admissible documentary evidence and witness testimony (**Doc. 33-4; Doc. 33-7; Doc. 36-2; Doc. 36-6**). Although Kuhler denies allegations of dishonesty (**Doc. 35 at 11**); his mental gymnastics do not hold up. Kuhler and the flight nurse gave

contradictory statements—first, no patient contact; second, patient contact. For much the same reason, Kuhler cannot explain away his dishonesty as an "omission." **Doc. 35 at 12**.

There is no weakness, implausibility, inconsistency, or otherwise in PHI's proffered reason for terminating Kuhler for dishonesty. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). The Court concludes Kuhler has not shown pretext.[19]

### b. Patient abandonment

Next, according to Kuhler, he did not abandon the patient (**Doc. 35 at 7**). From his point of view, "the alleged complaint [from the EMS crew] . . . did ***not*** complain that any patient abandonment had taken place. UMF 20." **Doc. 35 at 7**. Given that Kuhler cites to UMF 20, let's look at what that particular statement of fact says: "Lincoln County EMS confirmed that the PHI 54 crew made significant patient contact and initiated monitoring before leaving the scene." **Doc. 33 at 11 (UMF 20)**.

On one hand, Kuhler is correct—the complaint from EMS does not use the word abandonment. **Doc. 35 at 7**. But the facts support a finding of abandonment. Dictionaries far and wide define abandonment as leaving. *See, e.g., abandonment*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[R]elinquishing of or departing from . . . with the present, definite, and permanent intention of never returning or regaining possession."); *abandon*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) (defining abandon as "to forsake or desert esp. in spite of an allegiance, duty, or responsibility"); *abandon*, RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed. 1997) (defining abandon as "to leave," or "withdraw from").

---

[19] Once again, the Court could stop the analysis here—as Kuhler must disprove "each and every one of the legitimate, nondiscriminatory reasons provided for his termination." *Richardson v. Gallagher*, 553 F. App'x 816, 829 (10th Cir. 2014) (unpublished). Failure to disprove his dishonesty means summary judgment on Count II is appropriate. Nevertheless, the Court soldiers on—and discusses the futility of his remaining arguments for pretext.

Kuhler also asserts that "returning a patient to a lower level of care" does not amount to abandonment (**Doc. 35 at 11**). In support of this argument, he relies on the definition of abandonment provided in the New Mexico nursing regulation (**Doc. 35-12 at 6**). By definition, abandonment occurs when "the nurse has accepted the assignment to provide care, service or treatment to the consumer thus establishing a relationship and then abruptly severed the relationship." ***Ibid.*** Here, the undisputed facts show that: (1) Kuhler was dispatched on October 10, 2019, for a high-risk OB patient; (2) the flight crew "interacted with, assessed and placed a PHI-owned fetal monitor on the patient"; (3) Kuhler did not call PHI personnel or any physician; (4) Kuhler then left the scene. *See* **UMFs 12, 14, 18, 20**. This constitutes abandonment—or is at least close enough that the Court will not play the role of a Monday morning quarterback and second-guess this decision.

Kuhler makes it seem as though fitting his actions into the definition are impossible. The act of showing up, making patient contact, and then leaving equals abandonment. Kuhler knew his conduct fit into this definition. Back on October 21, 2019, Kuhler was emailing "Karen" about the "abort[ed]" patient (**Doc. 35-8 at 2**). Whether the patient was abandoned, or the flight was aborted is an immaterial gloss over the act itself. Either way, the patient was left. Disconnecting the equipment from the patient, leaving her with the ground ambulance crew, and flying back to base is why he was terminated (**Doc. 33 at 5**).

To establish pretext, Kuhler needed to come forward with evidence that the decision-makers (Yslas and the CHRO) did not believe Kuhler abandoned the patient. He has not. Therefore, Kuhler has not shown pretext.

### *c. PHI policy*

Kuhler's final argument in support of pretext revolves around the idea that "PHI has abandoned '5.3, Patient Informatics' as a basis for termination." **Doc. 35 at 8**. From Kuhler's point of view, the fact PHI alleges Kuhler also violated policy 1.4.1 proves pretext (***Id.* at 12**). He argues that because PHI has "abandoned" one basis for termination and added another, pretext may be inferred. *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 887 (10th Cir. 2018) ("A jury can reasonably infer pretext when an employer is inconsistent in the reasons it provides for the termination." (cleaned up)). *See* **Doc. 39 at 5**.

Certainly, a jury may infer pretext when an employer abandons a reason for termination. But PHI has not abandoned its reasons for termination (abandonment, dishonesty, and policy violations). PHI's first two reasons for termination are consistent. And so is the third—the violation of PHI policy. Plus, providing additional non-discriminatory reasons for termination does not establish pretext. *Rolland v. Carnation Bldg. Servs., Inc.*, 739 F. App'x 920, 924 (10th Cir. 2018) (unpublished).

Kuhler's argument about abandoned, inapplicable, or additional policy violations is unavailing. He has not shown pretext.

\* \* \*

Also, the Court notes that a Plaintiff can raise an inference of discrimination by showing differential treatment. This means when an employer treats similarly situated employees differently—that can be sufficient to show the employer discriminated. *Throupe*, 988 F.3d at 1252. But here, the facts cut against Kuhler (because he was treated the same as another similarly situated employee).[20] This is detrimental to his case. *See Garcia-Montoya*, 2001-NMSC-003, at ¶¶ 39–40

---

[20] For reasons unknown to the Court, Plaintiff's counsel alleges that the flight nurse was fired for other "unlawful" reasons (**Doc. 35 at 3**). According to Plaintiff's counsel, Kuhler and the flight nurse are not

(discussing whether "other employees in equivalent positions" were disciplined for committing "similar or even more severe rule violations"); *see also Gurule v. San Juan Cnty. Gov't*, 376 F. Supp. 2d 1195 (D.N.M. 2005) (Browning, J.) (granting summary judgment when an employer treated "similarly situated employees the same"). "PHI's identical treatment of both Kuhler and the flight nurse establishes that PHI's reasons for termination were not pretextual." **Doc. 36 at 12**.

Plainly, Kuhler has put forth no facts to suggest that PHI's decision was motivated by any reason contrary to public policy. Kuhler's assertion that he did not intend to lie or abandon a patient has no merit. PHI had legitimate non-discriminatory reasons (*plural*) to terminate Kuhler—and the undisputed facts make this clear.

### 4. Kuhler's circumstantial evidence

Kuhler claims each non-discriminatory reason PHI provided for terminating him was pretextual (**Doc. 35 at 8**). In support of this argument (or perhaps in addition to), Kuhler also provides two additional arguments that—in his view—support a finding of pretext (**Doc. 35 at 16**).

#### a. Temporal proximity

First, Kuhler argues that the timing is "sufficiently close to survive summary judgment on the question of causation." **Doc. 35 at 16**. In so doing, he relies on Tenth Circuit precedent. *Id.* (citing *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994)). But New Mexico courts have not adopted a "temporal proximity alone" test. *See Juneau*, 2006-NMSC-002, at ¶¶ 20–22; *supra* ¶ II.B.1. As the New Mexico Court of Appeals framed it, "temporal

---

similarly situated because she was a naval reservist woman—protected by the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Somehow, the fact she had a protected status is evidence that her termination for the same conduct was also unlawful.

This argument does not move the Court. Instead, these two individuals (Kuhler and the flight nurse) were both fired after doing substantially the same acts (**Doc. 36 at 12**). They are, in the Court's view, similarly situated for purposes of analysis.

proximity . . . is **one** factor that **may** support an inference of retaliatory motive." *Velasquez*, 2021-NMCA-007, at ¶ 41 (emphasis added).

According to Kuhler, Count II is grounded in common law (**Doc. 39 at 2**). But there "is no federal general common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). So "state, rather than federal, substantive law is at issue" here (because this is a diversity case). *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Therefore, Kuhler's reliance on federal substantive law to prove his case is misguided. Absent more evidence, the timing of his termination does not help him defeat PHI's motion for summary judgment.

### *b. Decision-maker knowledge*

Kuhler's second argument is based on "decision-maker knowledge." **Doc. 35 at 16**. Once again, Kuhler relies on Tenth Circuit precedent[21] to establish imputed knowledge up the decision-making chain. Specifically, Kuhler argues there is "more than sufficient [circumstantial evidence]" to establish "Ms. Yslas knew of Mr. Kuhler's request [for medical time off]." **Doc. 35 at 17**. His argument goes as follows:

- Kuhler's supervisor (Steiner) was aware of Kuhler's protected activity (**Doc. 35 at 17**).

- Steiner "sometimes communicated adverse job-related information" about Kuhler to Yslas (***Id.*** **at 17–18**).

- Yslas was the "decision-maker." ***Id.*** **at 18**.

- Therefore, Yslas knew about Kuhler's protected activity.

- And so, Kuhler was terminated for this protected activity.

---

[21] Primarily, Kuhler relies on *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631 (10th Cir. 1998) and *Hardeman v. City of Albuquerque*, 377 F.3d 1106 (10th Cir. 2004). *See* **Doc. 35 at 17–18**.

This argument is creative; but meritless. Essentially, Kuhler asserts that because Steiner provided data to PHI's internal investigation, he necessarily "communicated adverse job-related information" under *Anderson*. 861 F.2d at 635; **Doc. 35 at 17–18**. But these are not equivalent. In contrast to the supervisor in *Anderson*, the potential communicator(s) of the information in this case have expressly denied providing any such information. And there is no evidence of a "rumor mill" about Kuhler's protected activity among the decision-makers. *Hardeman*, 377 F.3d at 1114. In fact, there is no suggestion that—outside of the investigation—Steiner ever spoke to Yslas about Kuhler at all.

Based on the pleadings (**Docs. 33 & 35**), the Court concludes the parties *actually* agree to the following material facts:

- In early October, Kuhler told his supervisor (Steiner) that he "anticipated needing time off for an ear surgery and recover[y]" in the future. **UMF 7**.

- On October 10th, Kuhler (and a flight nurse) left a patient after making contact. **UMFs 12–20**.

- PHI initiated an investigation into the October 10, 2019, patient encounter. **UMF 21**.

- Yslas led the investigation. **UMFs 21–22**.

- Steiner's "only role" in the investigation was requesting written statements and obtaining fetal monitor data. **UMF 25**.

- Yslas and the CHRO were the two decision-makers. **UMF 29**.

- Neither Yslas nor the CHRO knew of Kuhler's requested accommodation. **UMFs 30–31**.

- The Yslas Report does not mention Kuhler's accommodation. **UMF 27**.

Given these facts, it should come as no surprise that the Court finds Kuhler's decision-maker knowledge argument unavailing. The Court arrives to this conclusion for a few reasons.

First and foremost, Kuhler did not set forth specific "facts" to defeat the summary judgment motion. Fed. R. Evid. 56(e). Instead, Kuhler's "facts" are nothing more than conclusory legal arguments. *See L&M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000). And unsupported legal conclusions are not sufficient to defeat summary judgment. *Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970) (noting that "legal conclusions" are "insufficient to satisfy the requirements of Rule 56").

Second, Kuhler's briefing (**Docs. 35 & 39**) cites to zero New Mexico cases discussing decision-maker knowledge. This is understandable, though—because no such cases exist. The *Anderson* standard for imputed knowledge as circumstantial evidence of discrimination is a federal creation. This is yet another fatal flaw.

But let's pretend similar New Mexico case existed. The only way there is a triable issue for a jury is if this imputed decision-maker knowledge was also a motivating factor in his termination. *See* **Doc. 39 at 2** (discussing the interplay between "decision-maker knowledge" and the "motivating factor" standard). So how would communications between a supervisor and decision-maker about an internal investigation prove that Kuhler's request for an accommodation was a motivating factor in PHI's decision to terminate him? They wouldn't. Especially when, as here, Steiner, Yslas, and the CHRO deny discussing Kuhler's accommodation (**UMFs 27–33**). Neither Yslas nor the CHRO even knew about the request. Thus, Kuhler's unknown accommodation could not have been a factor—let alone a motivating factor. *See Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, at ¶ 29, 124 N.M. 591, 953 P.2d 1089 (N.M. Ct. App. 1997) (explaining that under New Mexico law, a "motivating factor" must be a "substantial" reason); *see also Davis v. Utah*, 2021 U.S. App. LEXIS 26554, at *30 n.7 (10th Cir. Sept. 2, 2021) (unpublished) (highlighting that something "cannot be a substantial motivating factor . . . if the

decisionmaker was unaware" of that fact). At bottom, an employee (here, Kuhler) fails to prove the causal connection necessary to sustain a claim for retaliatory discharge when there is no evidence that the persons responsible for his discharge (*i.e.*, Yslas and the CHRO) had any knowledge of the protected activity. *See Fierro v. Mesa Verde Enters., Inc.*, 244 F. Supp. 3d 1153, 1164 (D.N.M. 2007) (citing New Mexico cases); *Trujillo*, 2002-NMSC-004, at ¶¶ 19 ("An employer cannot fire an employee 'because of' a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason." (citation omitted)).

Finally, the Court circles back to the fact that New Mexico courts do not recognize "decision-maker knowledge" or imputed employer knowledge. *See Trujillo*, 2002-NMSC-004, at ¶¶ 19; *Lihosit v. I&W, Inc.*, 1996-NMCA-033, at ¶ 15, 121 N.M. 455, 913 P.2d 262 (N.M. Ct. App. 1996) (cleaned up). In *Lihosit*, the Court of Appeals refused to attribute the knowledge of employees not involved in the termination process to the employer. *Id.* at ¶¶ 15–17. Here, neither Yslas nor the CHRO knew of Kuhler's accommodation (**UMFs 30–31**). This is the final nail in the coffin.

* * *

The record is clear: PHI provides several good faith non-discriminatory bases for terminating Kuhler. And Kuhler fails to provide any evidence undermining PHI's reasonable beliefs. There is, candidly, no triable issue of fact. *See Harmon v. City of Norman*, 61 F.4th 779, 787 (10th Cir. 2023) ("Where the record taken as a whole could not lead a rational trier of fact to find for the [party claiming injury], there is no genuine issue for trial."). Accordingly, summary judgment is appropriate.

**CONCLUSION**

For the reasons stated above, PHI's Motion for Summary Judgment (**Doc. 33**) is **GRANTED**. A separate judgment will be contemporaneously entered with this Memorandum Opinion and Order.

**IT IS SO ORDERED**.


/s/_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE